## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | Civil Action No. 1:22-cv-3200 |
| | : | |
| iFRESH, INC. and LONG DENG, | : | COMPLAINT |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |
| | : | |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC" or "Commission"),

for its Complaint against defendants iFresh, Inc. ("iFresh") and Long Deng (together,

"Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

1.      This matter involves accounting fraud, financial reporting violations, and internal

control failures by iFresh and its founder and CEO, Long Deng.  iFresh and Deng misled the

investing public about iFresh's finances by hiding and misstating information about related party

transactions that iFresh entered into with entities owned and controlled by Deng and his brother.

2.      A related party transaction is a transaction between two parties who have a close

association, such as family members and affiliates, have common ownership, or can significantly

influence one another's management or operating policies, as distinguished from a transaction

between third parties.  The SEC rules require public companies, like iFresh, to disclose all

related party transactions that exceed $120,000 in their public filings.   In addition, generally

accepted accounting principles require companies to disclose material related party transactions.

3.      Between August 10, 2016, when iFresh filed its initial registration statement, through August 13, 2020, when it filed its Form 10-K for the fiscal year ending March 31, 2020 (the "Relevant Period"), iFresh engaged in numerous transactions with entities related to Deng. However, iFresh did not properly disclose all of its related party transactions.

4.      As a result, iFresh's public filings were materially misstated in 2016, 2017, 2018, 2019, and 2020.  For example, between 2017 and 2020, from 18% to 54% of iFresh's accounts receivable were from undisclosed related party transactions.  Between 2016 and 2020, iFresh failed to disclose over $12 million in payments to a company owned by Deng's brother.

5.      Deng is responsible for these misstatements.  Since its inception, Deng closely controlled iFresh's operations and financial information.  Deng also controlled all of iFresh's undisclosed related parties either through ownership or by having signature authority over bank accounts.

6.      By misrepresenting information about its related party transactions, iFresh deprived investors of a true picture of how heavily iFresh and Deng's business interests were intertwined.

7.      iFresh had deficiencies in its internal controls over financial reporting, which contributed to its failure to accurately disclose its related party transactions.  During the Relevant Period, iFresh's internal accounting controls relating to its identification of related parties and disclosure of related party transactions were deficient in design and application, and failed to provide reasonable assurance that its financial statements were materially accurate.

8.      By engaging in the conduct described herein, iFresh violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15

U.S.C. § 78j(b), 15 U.S.C. § 78m(a), 15 U.S.C. § 78m(b)(2)(A), and 15 U.S.C. § 78m(b)(2)(B)] and Rules 10b-5, 12b-20 and 13a-1 thereunder [17 C.F.R. § 240.10b-5, 17 C.F.R § 240.12b-20, 17 C.F.R. § 240.13a-1]; Deng violated and aided and abetted Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and aided and abetted iFresh's violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder.

9.      Defendants will continue to violate the federal securities laws unless restrained or enjoined by this Court.

10.     The SEC therefore seeks a judgment against Defendants providing permanent injunctive relief; disgorgement of ill-gotten gains pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5), (7)]; imposing civil monetary penalties, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; prohibiting Deng from acting as an officer or director of a public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)]; as well as other appropriate and necessary relief.

## JURISDICTION AND VENUE

11.     The Commission brings this action pursuant to the authority conferred by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)].

12.     This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u, 78aa], and Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)].

13.     During the Relevant Period, iFresh was engaged in the offer and sale of securities; it raised approximately $6.25 million through four private offerings and issued shares in connection with compensation and acquisitions.

14.     Defendants directly or indirectly made use of the means or instruments of transportation and communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the acts, transactions, or practices alleged in this Complaint.

15.     Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. Acts, practices, and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Eastern District of New York. Moreover, Defendants reside in this district.

## DEFENDANTS

16.     **iFresh, Inc.** is a Delaware corporation with its headquarters in Long Island City, New York. iFresh is an Asian grocer that operates wholesale businesses and retail supermarkets in New York, Massachusetts, and Florida. Until November 2021 – when it was delisted due to its failures to timely file periodic reports and hold an annual shareholder meeting – iFresh's common stock was traded on the NASDAQ Capital Market. Currently, iFresh's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is quoted, only on an unsolicited basis, on the OTC Expert Market under the ticker symbol "IFMK."

17.     **Long Deng**, age 53, is a resident of Roselyn, New York. Deng was the Chairman of iFresh's board of directors from February 2017 through April 2022. Deng was also iFresh's Chief Executive Officer ("CEO") and Chief Operating Officer ("COO") from February 2017

through at least April 2022 (iFresh has not reported a new CEO or COO to the SEC as of the date of this Complaint).

## FACTUAL ALLEGATIONS

**I.**   **Background**

18.     In 1995, Deng founded NYM Holding, Inc. ("NYM"), an Asian grocery supermarket company.  Since then, he has served as NYM's CEO, COO, and sole director.

19.     In July 2016, NYM entered into a merger agreement under which it became a wholly owned subsidiary of iFresh.

20.     iFresh is an Asian supermarket chain with stores located in the Northeastern U.S. and in Florida.  In addition to retail supermarkets, iFresh operates two wholesale businesses that sell to its retail supermarkets and to third parties.

21.     iFresh became a public company in 2017 through a reverse merger with a special purpose acquisition company, or "SPAC," named E-Compass Acquisition Corp.

22.     Deng was CEO and COO since iFresh's formation in February 2017 through at least April 2022.  Deng was also the Chairman of the Board of iFresh from February 2017 until April 2022, when a Delaware Chancery Court affirmed a shareholder vote to remove him from iFresh's board of directors.

23.     During the relevant period, Deng owned up to 80.79% of iFresh's outstanding common stock.

24.     iFresh disclosed in its Form 10Ks that Deng's total compensation was approximately $700,000 for each fiscal year from 2017 through 2020.

II.     **Governing Accounting Principles, Standards, and Procedures**

25.     As a U.S. public company, iFresh is required by the SEC to file financial statements that are prepared in accordance with Generally Accepted Accounting Principles, or "GAAP."

26.     GAAP is a series of authoritative standards (set out by policy boards, including the Financial Accounting Standards Board, or "FASB") that standardizes and regulates the definitions, assumptions, and methods used in accounting across industries, and seeks to ensure that a company's financial statements are complete, consistent, and comparable.  This makes it easier for investors to analyze and extract useful information from a company's financial statements and facilitates the comparison of financial information across different companies.

27.     The federal securities laws require public companies such as iFresh to disclose information on an ongoing basis.  Among other things, public companies like iFresh must file a Form 10-K, which is an annual report that provides a comprehensive overview of the company's business and financial condition and includes audited financial statements.  This report is filed with the SEC, posted on the SEC's website, and thereby made available to the investing public.  Financial statements filed with the SEC which are not prepared in accordance with GAAP are presumed to be misleading.

28.     The federal securities laws and GAAP require companies to disclose certain information about their transactions with related parties.  Accounting Standards Codification ("ASC") Topic 850, *Related Party Disclosures* ("ASC 850") provides that related party transactions include, among other things, transactions between an entity and its principal owners or members of their immediate families.  ASC 850-10-05-3.  Immediate family is defined as "Family members who might control or influence a principal owner or a member of

management, or who might be controlled or influenced by a principal owner or a member of management, because of the family relationship." ASC 850-10-20. ASC 850 specifically enumerates sales, purchases, borrowings, and lendings as "[e]xamples of common [related party] transactions." ASC 850-10-05-4.

29.     With respect to related party transactions, ASC 850 requires disclosures of the (a) nature of the relationships, (b) descriptions of the transactions; and (c) the dollar amounts of the transactions. ASC 850-10-50-1.

30.     Item 404(a) of Regulation S-K requires issuers to disclose any transaction exceeding $120,000 in which the registrant was or is to be a participant and in which any related person had or will have a direct or indirect material interest. The instructions to Item 404(a) define related person to include any immediate family member of a director or executive officer of a registrant, which includes siblings.

**III.     iFresh Enters into Numerous Related Party Transactions.**

31.     After its reverse merger in February 2017, iFresh, through Deng, continued a course of conduct that Deng began at NYM – conducting numerous transactions with related parties.

32.     iFresh engaged in transactions involving multiple related parties, including (a) Deng himself, (b) companies owned in whole or in part by Deng, (c) companies owned in whole or in part by Deng's brother, and (d) companies over which Deng otherwise exercised control by having signature authority over bank accounts.

33.     iFresh disclosed some of these related party transactions in its public filings. For example, since July 2017, iFresh disclosed that it acquired several grocery stores from Deng.

34.     However, as explained below, iFresh failed to fully disclose all its related party transactions, as required by the federal securities laws and GAAP.

35.     Since its inception, Deng closely controlled iFresh's operations and financial information.  Deng controlled iFresh's bank accounts.  He also controlled all of iFresh's undisclosed related parties either through ownership or by having signature authority over bank accounts.

36.     Deng sometimes transferred money between iFresh and related parties in an informal way, without documentation.  For example, Deng caused iFresh to borrow funds multiple times from an entity which had a bank account that Deng controlled, without documenting the loans in written agreements.

## IV.     iFresh Failed to Properly Disclose Related Party Transactions in its Public Filings.

37.     During the Relevant Period, at least five of iFresh's public filings were materially misstated, because iFresh failed to properly disclose related party transactions.  These materially misstated public filings include iFresh's (a) Form S-4 filed on December 16, 2016, (b) Form 10-K for the fiscal year ended March 31, 2017, filed on June 29, 2017; (c) Form 10-K for the fiscal year ended March 31, 2018, filed on June 29, 2018; (d) Form 10-K for the fiscal year ended March 31, 2019, filed on June 28, 2019; and (e) Form 10-K for the fiscal year ended March 31, 2020, filed on August 13, 2020.

38.     These misstatements were material.  Reasonable investors would consider transactions between iFresh and related parties important to a decision to invest.  The misstatements deprived investors of information about the amounts iFresh received from and paid to related parties, amounts due to and from related parties, and how heavily intertwined iFresh was with Deng.

8

A.    **iFresh Mischaracterized Related Party Transactions as Transactions with Third Parties**.

39.    iFresh failed to disclose numerous related party transactions.  Thereby, iFresh mischaracterized many of its related party transactions as transactions with third parties in its financial statements.

40.    There were approximately $6.5 million of related party transactions affecting iFresh's net assets over the Relevant Period that were not disclosed (Table 1).

**Table 1: iFresh's Undisclosed Related Party Transactions During Relevant Period**

|  | March 31, 2020 | March 31, 2019 | March 31, 2018 | March 31, 2017 | March 31, 2016 |
|---|---|---|---|---|---|
| Accounts receivables (1) | $1,470,338 | $1,883,250 | $2,626,757 | $400,392 | - |
| Prepaid expenses and other current assets (2) | $619,477 | $867,192 | $613,349 | $221,897 | $220,442 |
| Other payables, current (3) | $712,998 | $856,137 | $706,585 | $98,299 | $4,509 |
| **Net Assets Related to Undisclosed Related Party Transactions (=1+2-3)** | **$1,376,817** | **$1,894,305** | **$2,533,521** | **$523,990** | **$215,933** |
| Net Assets Reported by iFresh | ($2,550,147) | ($1,031,979) | $5,465,476 | $5,904,189 | $5,111,626 |

41.    iFresh's failures to properly disclose transactions with related parties fell into two categories.  First, in some cases, iFresh had properly identified an entity as a related party in its public filings and/or in its internal records, but it failed to disclose all of its transactions with that related party as related party transactions in its public filings.  Second, iFresh failed to identify some entities as related parties in the first place.

42.    As an example of the first category of failure, iFresh failed to disclose transactions with a related party named New York Supermarket, Inc.  New York Supermarket, Inc. was a related party because it was 100% owned by Deng.  iFresh identified New York

Supermarket, Inc. in its internal records as a related party.  From fiscal years 2016 through 2020, iFresh made loans to New York Supermarket, Inc.  However, iFresh did not disclose these loans as related party transactions in its public filings.

43.     As another example, for the fiscal year ended March 31, 2020, iFresh failed to disclose approximately $200,000 in accounts receivable due from five related parties that had been either categorized as related parties in iFresh's internal records and/or identified as related parties in iFresh's public filings.  These five related parties are Spicy Bubbles, Inc., Sunray Venus LLC, Spring Farm WPB Inc., NYM Tampa Seafood Inc. ("NYM Tampa"), and New York Mart El Monte Inc. ("NYM El Monte").

44.     iFresh presented on the face of its consolidated balance sheets a line item for advances and receivables due from related parties.  This line item should have captured all relevant amounts due from related parties, including the transactions described above in paragraphs 42 and 43.

45.     The following table summarizes the parties which iFresh identified as related in its public filings and/or internal records with whom iFresh engaged in undisclosed related party transactions:

**Table 2.**

| Related Party | Relationship to iFresh | Fiscal Year(s) Impacted by Undisclosed Related Party Transactions |
|---|---|---|
| New York Supermarket Inc. | 100% owned by Deng | 2017-2020 |
| United States of America-China Chamber of Commerce ("USCC") | Controlled by Deng – President | 2018, 2020 |
| Dragon 6th Ave LLC | 99% owned by Deng | 2020 |
| Spicy Bubbles Inc. | 100% owned by Deng | 2017-2020 |
| Sunray Venus LLC | 100% owned by Deng | 2019-2020 |
| Spring Farm WPB Inc. | 100% owned by Deng | 2020 |
| NYM Tampa | 70% owned by Deng | 2020 |
| NYM El Monte | 100% owned by Deng | 2020 |

46.     Next, as an example of the second type of failure – iFresh's failure to disclose related party transactions with entities that it failed to identify as related parties in the first place – iFresh failed to properly disclose transactions with a related party named Li Ba HVAC & Construction Inc. ("Li Ba").  Li Ba was a related party to iFresh for two reasons.  First, because Deng was signatory on Li Ba's bank accounts, he controlled the company.  In addition, Deng's brother owned Li Ba.  However, iFresh did not identify Li Ba as a related party in its publicly filed financial statements.

47.     Between fiscal years 2016 and 2020, in each fiscal year, iFresh made the following material payments to Li Ba for property and equipment:

**Table 3.**

| March 31, 2020 | March 31, 2019 | March 31, 2018 | March 31, 2017 | March 31, 2016 |
|---|---|---|---|---|
| $ 1,288,264 | $ 2,266,563 | $ 5,570,905 | $ 1,836,488 | $ 1,373,950 |

In addition, there were amounts due to and from Li Ba for the fiscal years 2016 through 2020, and iFresh recognized sales to Li Ba from fiscal years 2017 through 2019.  iFresh was required to disclose all of these transactions as related party transactions, but it failed to do so.  Also,

iFresh should have reported all amounts due from Li Ba on the consolidated balance sheet in the line item for advances and receivables due from related parties, but failed to do so.

48.     In addition, in fiscal year 2020, Deng made payments totaling $500,000 to repay amounts owed by another related party, New York Mart White Plains Inc. ("NYM White Plains").  Like Li Ba, NYM White Plains was a related party because (a) Deng had signatory authority over its bank account, and (b) it was owned and controlled by Deng's brother.  iFresh was required but failed to disclose these payments as related party transactions.

49.     Also in fiscal year 2020, another undisclosed related party, Jiutian Music Club Inc. ("Jiutian"), made capital contributions to iFresh on behalf of Deng totaling over $500,000. Like Li Ba and NYM White Plains, Jiutian was a related party because (a) Deng had signatory authority over its bank account, and (b) it was owned and controlled by Deng's brother.  Again, iFresh was required to but failed to disclose those capital contributions as related party transactions.

50.     In summary, the following table summarizes the related parties that iFresh failed to identify as related parties and the fiscal years wherein iFresh's public filings contained undisclosed related party transactions:

**Table 4.**

| Related Party | Relationship to iFresh | Fiscal Year(s) Impacted by Undisclosed Related Party Transactions |
|---|---|---|
| Li Ba | Controlled by Deng (signature authority over a bank account) & owned and controlled by Deng's brother | 2016-2020 |
| New York Mart River Edge Inc. | Controlled by Deng (signature authority over a bank account) | 2017-2020 |
| NYM White Plains | Controlled by Deng (signature authority over a bank account) & owned and controlled by Deng's brother | 2017-2020 |
| Jiutian | Controlled by Deng (signature authority over a bank account) & owned and controlled by Deng's brother | 2020 |
| 900 Northlake LLC | Controlled by Deng (signature authority over a bank account and was a manager and member) | 2017, 2018 |
| Silong Management Inc. | Controlled by Deng (signature authority over a bank account) | 2020 |
| 551 Management Inc. | Controlled by Deng (signature authority over a bank account) | 2020 |
| E. Colonial Management Inc. | Controlled by Deng (signature authority over a bank account) | 2020 |
| Sunrise Management Inc. | Controlled by Deng (signature authority over a bank account) | 2020 |

51.     Taken together, iFresh's undisclosed related party transactions were material to iFresh's consolidated balance sheets.  For example, from fiscal year 2017 through fiscal year 2020, between 18% and 54% of iFresh's net accounts receivable were from undisclosed related party transactions.   See Table 5 below.

**Table 5.  Balance Sheet – as of the Years Ended March 31[1]**

| | March 31, 2020 | March 31, 2019 | March 31, 2018 | March 31, 2017 | March 31, 2016 |
|---|---|---|---|---|---|
| Accounts receivable, net | 43% | 47% | 54% | 18% | 0% |

---

[1]   Errors are calculated as undisclosed related party transaction/originally reported amount.  For example, accounts receivable due from undisclosed related parties for the year ended 3/31/2020 was approximately $1.47 million and the accounts receivable, net reported by iFresh was approximately $3.41 million, or 43% ($1.47/$3.41).

| | | | | | |
|---|---|---|---|---|---|
| Prepaid expenses and other current assets | 17% | 23% | 32% | 23% | 47% |
| Other payables, current | 20% | 29% | 60% | 20% | 1% |

52.     In addition, iFresh's undisclosed related party transactions materially impacted iFresh's income statements.  For example, iFresh presented on the face of its consolidated statements of income a line item for net sales to related parties.  This line item should have captured all sales to related parties.  During fiscal years 2018 and 2019 iFresh had approximately $9.8 million and $4.2 million, respectively, in sales to undisclosed related parties.  iFresh failed to report these sales on the consolidated statements of income as sales to related parties and failed to disclose the sales as related party transactions.  As a result, sales to related parties was understated by 33% for the fiscal year 2018 and 17% for the fiscal year 2019.

### B.     **iFresh Misrepresented a Legal Settlement Involving a Related Party.**

53.     In its Form 10-K for fiscal year ending March 31, 2018, iFresh erroneously described a legal settlement that occurred in May 2018.  iFresh disclosed as a subsequent event that it had entered into a settlement with Jendo Ermi LP ("Jendo") in connection with lawsuits the parties had filed against one another.  iFresh disclosed in the notes to its financial statements, "New York Mart El Monte, Inc., a third party, timely paid the full settlement amount [of $652,038.73] on behalf of iFresh."

54.     This disclosure was wrong in two respects.  First, NYM El Monte, which was owned by Deng, was a related party, not a third party.  Second, NYM El Monte did not make this payment; Li Ba did.

55.     In addition, iFresh recorded the settlement in fiscal year 2019 in its general ledger as a payable due to shareholder (Deng), as if Deng himself made the settlement payment, instead of as a payable due to Li Ba or, for that matter, to NYM El Monte.

V.   **Deng Signed the Misstated Financial Statements.**

56.    For each of the four Form 10-Ks that iFresh filed for the fiscal years ending March 31, 2017 through March 31, 2020, Deng signed the report on behalf of iFresh in his capacities as iFresh's CEO, COO, and Principal Operating Officer.

57.    As part of each of those four filings, Deng signed a certification affirming that, based on his knowledge, the Form 10-K did not "contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading…."  Deng further certified that "the financial statements, and other financial information included in this report fairly represent in all material respects the financial condition … of [iFresh]…."

58.    Deng signed these filings and certifications without reading them.  Instead, Deng relied on iFresh employees to brief him on the contents of the public filings he signed.

59.    Deng was at least reckless in signing the filings and certifications.  He knew that iFresh engaged in many transactions with related parties, because he made those transactions, caused others to make the transactions, and/or controlled the related parties through ownership or signature authority.  As described below, also Deng knew or was reckless in not knowing that iFresh had insufficient controls and procedures to identify all of the related parties and related party transactions.  Therefore, the danger of misstatement was obvious to Deng.

VI.   **Deng's Misrepresentations and Omissions to iFresh's Auditor.**

60.    Each year during the Relevant Period, iFresh's auditor (the "Auditor") audited iFresh's financial statements.

61.    Deng never disclosed to the Auditor that he had signatory authority over some of the parties with which iFresh was transacting.  For example, he never disclosed (or caused others

to disclose) to the Auditor that he had signatory authority over the bank accounts of the entities listed above in Table 4.

62.     In connection with each audit, iFresh sent a management representation letter to the Auditor.  Among other things, these letters contained representations that:

(a) iFresh's consolidated financial statements were presented in conformity with U.S. GAAP;

(b) iFresh had made available to the Auditor the names of all related parties and relationships and transactions with related parties;

(c) All material transactions had been properly recorded in iFresh's accounting records underlying its consolidated financial statements;

(d) Related party relationships or transactions – including sales, purchases, loans, transfers, leasing arrangements, guarantees, and amounts receivable from or payable to related parties – had been properly accounted for and adequately disclosed in the consolidated financial statements.

63.     Deng signed management representation letters containing the above representations in 2016, 2017, 2018, 2019, 2020.  Specifically, he signed letters dated:

(a) July 15, 2016, referencing NYM's financial statements for the fiscal years ending March 31, 2015 and March 31, 2016;

(b) June 29, 2017, referencing iFresh's financial statements for the fiscal years ending March 31, 2016 and March 31, 2017;

(c) June 29, 2018, referencing iFresh's financial statements for the fiscal years ending March 31, 2017 and March 31, 2018;

(d) June 28, 2019, referencing iFresh's financial statements for the fiscal years ending March 31, 2018 and March 31, 2019; and

(e) August 13, 2020, referencing iFresh's financial statements for the fiscal years ending 2019 and 2020.

64.     These representations to the Auditor were false.  In fact, the lists of related parties provided to the Auditor were incomplete.  iFresh omitted related parties such as Li Ba, NYM White Plains, Jiutian Music Club, Inc., and others shown in Table 4.

65.     In these management representation letters, Deng also acknowledged his responsibility for the "design and implementation of programs and controls to prevent and detect fraud."

66.     Deng was at least reckless in signing the management representation letters containing these false representations.  As described below, Deng knew or was reckless in not knowing that iFresh had insufficient controls and procedures to identify related parties, and he did not take sufficient steps to ensure that iFresh properly accounted for and disclosed all related party transactions in its public filings.

## VII.   iFresh's Inadequate Internal Controls Failed to Identify All of its Related Party Transactions.

67.     As a public company, iFresh was required to make and keep books, records, and accounts, which accurately reflected its transactions and dispositions of its assets.

68.     iFresh was also required to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that, among other things, transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP. To that end, iFresh was required to establish procedures designed to prevent errors and irregularities.

69.     In its Form 10Ks for fiscal years 2018, 2019, and 2020, iFresh disclosed that it had concluded its internal controls over financial reporting were not effective.  For the fiscal years 2019 and 2020, iFresh disclosed it had identified material weakness and control deficiencies in its internal control over financial reporting related to (a) the deficiencies in the ability of its in-house accounting professionals to generate financial statements in accordance with GAAP and (b) lack of accounting and internal control staff experienced in GAAP.

70.     On November 23, 2021, iFresh's common stock was de-listed from the NASDAQ Capital Market.  According to iFresh's public disclosure regarding its de-listing, NASDAQ's decision was based in part on its failure to address in a timely manner material weaknesses in internal controls over financial reporting.

71.     In particular, iFresh's internal accounting controls and recordkeeping systems were not properly designed to provide reasonable assurance that iFresh would identify related parties and properly disclose all of its related party transactions as necessary to permit preparation of financial statements in conformity with GAAP.

72.     Since its inception, Deng closely controlled iFresh's operations and financial information.  Deng served as both CEO and COO of iFresh during the entire Relevant Period. iFresh disclosed in its public filings that Deng was also the company's Chief Operating Decision Maker or "CODM".  This meant, according to iFresh's filings, that Deng "bears ultimate responsibility for, and is actively engaged in, the allocation of resources and the evaluation of the Company's operating and financial results."

73.     Between February 2017 and June 2021, iFresh employed succession of six short term Chief Financial Officers, or "CFOs."  Deng did not ensure that iFresh's CFOs had access to information regarding related party transactions.

18

74.     iFresh employed an accounting manager (the "Accounting Manager"), who assisted Deng with, among other things, identifying related parties.  The Accounting Manager had limited knowledge of GAAP and no prior SEC reporting experience.

75.     Even though Deng controlled all the related parties at issue through signature authority and/or ownership, he did not take an active role in verifying the accuracy of iFresh's records.

76.     Deng knew that iFresh conducted many related party transactions.  He also knew related party transactions was a significant audit area identified by the Auditor during iFresh's audits.  Nevertheless, Deng failed to ensure that iFresh's accounting staff properly identified related parties and the transactions with related parties were properly accounted for and adequately disclosed in the consolidated financial statements.

77.     The principal procedure that iFresh used to identify related parties was for Deng and the Accounting Manager annually to review a list of iFresh's related parties (the "Related Party Lists").  The Related Party Lists were provided to the Auditor.  iFresh had no procedures regarding how the Related Party Lists should be created, who should create them, what information they should contain, or what the review process should entail.  Deng – who controlled the information about the related parties – did not know how the Related Party Lists were compiled.  Together with the Accounting Manager, Deng reviewed these Related Party Lists, but he did not consider whether the lists were missing any entities.  Rather, his review focused on whether any entities should be removed from the Related Party Lists.

78.     Other than the annual review of the Related Party Lists, Deng did not do anything to ensure that the Accounting Manager knew all of iFresh's related parties.

79.     Although iFresh relied on Deng and the Accounting Manager to identify related parties, neither Deng nor the Accounting Manager adequately understood the disclosure rules regarding related party transactions.  Neither performed any independent research to understand the SEC and GAAP definitions of a related party.

80.     Deng never asked the Accounting Manager or any of the iFresh CFOs what steps were taken to ensure all related parties were identified and related party transactions had been properly accounted for and disclosed by iFresh.

## VIII.     <u>iFresh and Deng Acquired Money.</u>

81.     During the Relevant Period, according to Form 4s filed by Deng, Deng sold at least $19 million worth of iFresh stock.

82.     During the Relevant Period, iFresh raised over $6 million through four private offerings.  It also issued shares in connection with various acquisitions and compensation.

83.     If purchasers of iFresh stock had known about iFresh's undisclosed related party transactions, they would likely have assigned a lower value to iFresh and its stock.  Therefore, when Deng and iFresh sold stock during the Relevant Period, iFresh stock prices were artificially inflated, and Defendants benefitted from the undisclosed related party transactions.

## IX.     <u>This Action Is Timely Filed.</u>

84.     This misconduct at issue in this Complaint occurred between August 2016 and August 2020.

85.     Each of the Defendants has entered into agreements with the SEC in which they agreed to toll, for various periods and lengths of time, any statute of limitations applicable to the conduct and claims alleged herein.  iFresh's tolling agreements cover the period between August

6, 2021 through June 1, 2022 and Deng's tolling agreements cover the period between July 1, 2021 through July 1, 2022.

## CLAIMS FOR RELIEF

### COUNT I

***Against Defendants iFresh and Deng,***
***for Violations of Section 10(b) of the Exchange Act***
***and Rule 10b-5 Thereunder***

86.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

87.     Defendants, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce or the mails, directly and indirectly: (a) used and employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other persons, including current and prospective investors.

88.     Defendants knowingly or recklessly engaged in the fraudulent conduct described above.

89.     By engaging in the conduct described above, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II

***(In the alternative)***
***Against Defendant Deng,***
***for Aiding and Abetting iFresh's Violations of***
***Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder***

90.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

91.     iFresh, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce or the mails, directly and indirectly: (a) used and employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other persons, including current and prospective investors.

92.     By engaging in the conduct described above, iFresh violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

93.     Defendant Deng knowingly or recklessly provided substantial assistance to iFresh in its violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

94.     By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Deng aided and abetted iFresh's violations and, unless restrained and enjoined, will in the future aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT III

### *Against Defendants iFresh and Deng,*
### *for Violations of Section 17(a) of the Securities Act*

95.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

96.     Defendants, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly and indirectly: (a) knowingly or recklessly employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

97.     Defendants knowingly, recklessly, or negligently engaged in the fraudulent conduct described above.

98.     By engaging in the conduct described above, Defendants violated and unless restrained and enjoined will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT IV

### *(In the alternative)*
### *Against Defendant and Deng,*
### *for Aiding and Abetting iFresh's Violations of Section 17(a) of the Securities Act*

99.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

100.     iFresh, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly and indirectly: (a) knowingly or recklessly employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

101.     By engaging in the conduct described above, iFresh violated and unless restrained and enjoined will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

102.     Defendant Deng knowingly or recklessly provided substantial assistance to iFresh in its violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

103.     By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Deng aided and abetted iFresh's violations and, unless restrained and enjoined, will in the future aid and abet violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT V

### Against Defendant iFresh
### for Violations of Section 13(a) of the Exchange Act and
### Rules 12b-20 and 13a-1 thereunder

104.    The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

105.    Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rule 13a-1 [17 C.F.R. § 240.13a-1] require issuers of registered securities to file with the Commission factually accurate annual reports.  Exchange Act Rule 12b-20 [17 C.F. R. § 240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

106.    By engaging in the conduct described above, iFresh filed with the Commission and disseminated to investors false and misleading annual reports, each containing untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

107.    By reason of the foregoing, iFresh, directly or indirectly, violated and, unless restrained and enjoined, will continue to violate Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1].

## COUNT VI

### *Against Defendant Deng,*
### *for Aiding And Abetting Violations of Section 13(a) of the Exchange Act*
### *and Rules 12b-20 and 13a-1 thereunder*

108.    The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

109.    Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rule 13a-1 [17 C.F.R. § 240.13a-1] require issuers of registered securities to file with the Commission factually accurate annual reports.  Exchange Act Rule 12b-20 [17 C.F. R. § 240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

110.    iFresh filed with the Commission and disseminated to investors false and misleading annual reports in violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1].

111.    Defendant Deng knowingly or recklessly provided substantial assistance to iFresh in its violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1].

112.    By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Deng aided and abetted iFresh's violations and, unless restrained and enjoined, will in the future aid and abet violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1].

## COUNT VII

### *Against Defendant iFresh*
### *for Violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act*

113.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

114.     Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires issuers to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets.  Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

115.     By engaging in the conduct described above, iFresh violated and, unless retrained and enjoined, will continue to violate Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A) and 78(m)(b)(2)(B)].

## COUNT VIII

### *Against Defendant Deng*
### *for Aiding and Abetting iFresh's Violation of Sections*
### *13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act*

116.     The Commission realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

117.     By engaging in the conduct described above, iFresh violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A) and 78(m)(b)(2)(B)].

118.     By engaging in the conduct described above, Deng knowingly or recklessly provided substantial assistance to iFresh in its failures to (1) make and keep accurate books,

records, and accounts; and (2) to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

119.    By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Deng aided and abetted iFresh's violations and, unless retrained and enjoined, will in the future aid and abet violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A) and 78(m)(b)(2)(B)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

## I.

Enter an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining iFresh, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with iFresh who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the acts, practices or courses of business alleged above, or in conduct of similar purport and object, in violation of Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(2)(A), and 78(m)(b)(2)(B)] and

Rules 10b-5, 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1], and

Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

## II.

Enter an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the

Federal Rules of Civil Procedure, restraining and enjoining Deng from, directly or indirectly,

engaging in the acts, practices or courses of business alleged above, or in conduct of similar

purport and object, in violation of Sections 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and Section 17(a) of the Securities Act [15

U.S.C. § 77q(a)], and from aiding and abetting violations of 13(a), 13(b)(2)(A), and 13(b)(2)(B)

of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20

and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1];

## III.

Enter an Order requiring Defendants to disgorge the ill-gotten gains that they received,

directly or indirectly, from the violations alleged herein, including prejudgment interest pursuant

to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5), (7)];

## IV.

Enter an Order requiring Defendants to pay civil penalties pursuant to Section 20(d) of

the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)];

## V.

Enter an Order, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e) and

Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], permanently prohibiting Deng

from serving as an officer or director of any issuer that has a class of securities registered

pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act;

## VI.

Retain jurisdiction over this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

## VII.

Grant such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury on all issues so triable.

May 31, 2022                                        Respectfully submitted,

                                                   **UNITED STATES SECURITIES AND**
                                                   **EXCHANGE COMMISSION**

                                                     /s/ Alyssa A. Qualls
                                                   Alyssa A. Qualls (AQ-4247)
                                                   Ariella O. Guardi, Illinois Bar No. 6297336
                                                   Ruta G. Dudenas, Illinois Bar No. 6274848
                                                   175 West Jackson Boulevard, Suite 1450
                                                   Chicago, Illinois 60604
                                                   (312) 353-7390
                                                   (312) 353-7398 (FAX)
                                                   quallsa@sec.gov
                                                   guardia@sec.gov
                                                   dudenasr@sec.gov

                                                   *Attorneys for Plaintiff*
                                                   *U.S. Securities and Exchange Commission*